IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DONALD HAYWOOD, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 16-CV-3566 |
| | ) | |
| v. | ) | Hon. Amy St. Eve |
| | ) | |
| WEXFORD HEALTH SOURCES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On March 23, 2016, Plaintiff Donald Haywood, an inmate within the Illinois Department of Corrections ("IDOC"), brought the present Complaint pursuant to 42 U.S.C. § 1983 alleging that the defendants violated his constitutional rights by exhibiting deliberate indifference to his mental health needs. Plaintiff has sued Wexford Health Sources ("Wexford"), certain Wexford employees, and several members of the IDOC medical staff (collectively, "Defendants"). Before the Court is Wexford's motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants Defendant's motion to dismiss.

**BACKGROUND**

Plaintiff is a prisoner currently in the custody of IDOC at Pontiac Correctional Center ("PCC"). (R. 16, Am. Compl. ¶ 1.) At all times relevant to this complaint, Plaintiff was incarcerated at either PCC or Stateville Correctional Center ("SCC"). (*Id*.) Wexford is a Pennsylvania corporation with a place of business in St. Charles, Illinois. (*Id*. ¶ 2.) Wexford provides health care services on behalf of IDOC to prisoners at PCC and SCC. (*Id*.) Wexford

also has the responsibility for the implementation and oversight of health care policies at PCC and SCC. (*Id.*)

Plaintiff alleges that prior to his incarceration, he had a long history of diagnosed mental illness, including five suicide attempts. (*Id.* ¶¶ 23-25.) Plaintiff has been diagnosed with depression, antisocial personality disorder, and post-traumatic stress disorder, and as a result, IDOC classified him as "seriously mentally ill" or "SMI." (*Id.* ¶¶ 26-27.) Plaintiff alleges that, since June 2014, Defendants have failed to treat Plaintiff's mental illnesses and have instead punished him when he requested treatment. (*Id.* ¶¶ 30, 32.)

Specifically, Plaintiff alleges that while in segregation at SCC in June 2014, Catherine Larry, the Wexford doctor assigned to provide medical care to inmates in segregation, failed to visit Plaintiff or provide him with mental health treatment. (*Id.* ¶¶ 33-34.) Beth Hart, a Wexford employee, also failed to provide treatment to Plaintiff or visit him in segregation. (*Id.* ¶¶ 38-40.) Plaintiff alleges that he filed multiple complaints and grievances in response to Larry and Hart's failure to treat him, and in response, Larry and Hart falsified reports indicating that they had in fact visited Plaintiff and that he was receiving medical care. (*Id.* ¶¶ 35-36, 41-42.) Plaintiff alleges that Larry and Hart commonly failed to provide mental health treatment to SMI inmates or other mentally ill inmates at SCC for whom they had a personal dislike. (*Id.* ¶ 44.) Plaintiff alleges that Larry and Hart personally disliked Plaintiff, and as a result, they denied him mental health treatment. (*Id.* ¶ 45.)

On or about June 11, 2015, Plaintiff sought assistance from Jason Berry, a "Crisis Team" member, but Berry filed a disciplinary report against Plaintiff instead of providing him with treatment. (*Id.* ¶¶ 55-56.) On or about June 15, 2015, Plaintiff informed Charles Best and Lakeisha Acklin, members of the "Adjustment Committee," that Berry filed a disciplinary report

2

against him in order to deny him mental health treatment. (*Id.* ¶¶ 57, 59.) Plaintiff alleges that Best and Acklin also failed to provide him with mental health treatment. (*Id.* ¶ 60.) On December 1, 2015, eighteen months after his initial request for treatment, Dr. Conrad, a Wexford employee, met with Plaintiff to provide medical treatment. (*Id.* ¶ 61.) Plaintiff alleges that he complained to Conrad about his lack of treatment, and Conrad threatened to discontinue Plaintiff's prescription medications. (*Id.* ¶¶ 62-63.) In response, on January 1, 2016, Plaintiff filed a written complaint seeking assistance in the treatment of his mental illnesses. (*Id.* ¶ 64.) Plaintiff alleges that, as a result of this complaint, various SCC correctional officers physically assaulted him. (*Id.* ¶ 65.)

In July 2016, Plaintiff was transferred to PCC. (*Id.* ¶ 69.) Plaintiff alleges that on July 29, 2016, he met with Kelly Haag, a Wexford mental health therapist, but that Haag did not provide any mental health treatment. (*Id.* ¶¶ 70-71.) Plaintiff alleges that he requested additional treatment, but Haag did not meet with him again until the September or October 2016, at which point, Haag revoked Plaintiff's SMI status and placed him on suicide watch. (*Id.* ¶¶ 72-73.) Plaintiff alleges that he has since made multiples requests for mental health assistance, but PCC psychologists have refused to treat him and instead approved the revocation of his SMI status. (*Id.* ¶¶ 38-40.) Plaintiff alleges that no one at PCC has provided him with a mental health evaluation, and as a result, his mental health disorders have worsened. (*Id.* ¶¶ 77, 80.)

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the

3

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). In determining the sufficiency of a complaint under the plausibility standard, courts must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

## ANALYSIS

In Count I of his complaint, Plaintiff alleges that Wexford had policies and customs in effect that allowed Defendants to exhibit deliberate indifference to Plaintiff's mental health needs causing him physical injuries and mental anguish in violation of the Eighth Amendment. In Count II, Plaintiff seeks to hold Wexford liable under a theory of *respondeat superior* for the deliberately indifferent actions of the various individuals that denied Plaintiff mental health treatment. In its motion to dismiss, Wexford makes three arguments: (1) the Court should dismiss Count I because Plaintiff has failed to state a claim under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978); (2) the Court should dismiss Count II because there is no *respondeat superior* liability for § 1983 actions against private corporations; (3) Plaintiff is not entitled compensatory damages because he has not sustained a physical injury. The Court addresses each argument in turn.

4

**I.     Count I—*Monell* Claim**

In *Monell*, the Supreme Court established that a municipality may face liability for money damages under § 1983 only if the unconstitutional act about which the plaintiff complains was caused by (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority. *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Monell*, 436 U.S. at 690). Wexford, a private corporation contracted by IDOC, is subject to a *Monell* claim just like any municipality would be. *See, e.g., Minix v. Canarecci*, 597 F.3d 824, 832 (7th Cir. 2010). "To establish municipal liability, a plaintiff must show the existence of an 'official policy' or other governmental custom that not only causes but is the "moving force" behind the deprivation of constitutional rights." *Teesdale v. City of Chicago,* 690 F.3d 829, 833–34 (7th Cir. 2012). Thus, to prevail on his *Monell* claim against Wexford, Plaintiff must show that "his injury was caused by a Wexford policy, custom, or practice of deliberate indifference to medical needs, or a series of bad acts that together raise the inference of such a policy." *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 796 (7th Cir. 2014). In addition, a plaintiff asserting a policy or practice claim ultimately "must demonstrate that there is a policy at issue rather than a random event." *Thomas*, 604 F.3d at 303. "This may take the form of an implicit policy" or "a series of violations to lay the premise of deliberate indifference." *Id.* (internal citations and quotations omitted).

The Seventh Circuit has not adopted a bright-line rule defining what constitutes a widespread custom or practice, and there is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability. *See id.*; *see also Arita v. Wexford Health Sources, Inc.*, No. 15-CV-01173, 2016 WL 6432578, at *2 (N.D. Ill. Oct. 31, 2016). It is clear, however, that

5

the conduct complained of must have occurred more than once, or even three times. *Thomas*, 604 F.3d at 303. Also, importantly, while "it is not impossible for a plaintiff to demonstrate the existence of an official policy or custom by presenting evidence limited to [one individual's] experience," it is difficult because "what is needed is evidence that there is a true municipal [or corporate] policy at issue not a random event." *Grieveson v. Anderson*, 538 F.3d. 763, 774 (7th Cir. 2008).

In its motion to dismiss, Wexford argues that Plaintiff has failed to allege a custom or practice of deliberate indifference to his medical needs. Several courts in this district have found that there is not a sufficient pattern of deliberate indifference to support a *Monell* claim where the alleged indifference is directed at only the plaintiff individually and not at multiple inmates. In *Arita*, for example, the court dismissed a *Monell* claim against Wexford because although the plaintiff alleged that he requested medical treatment for nine months with no response, and did not receive treatment for over a year, there were "no facts—outside of those related to [the plaintiff's] own experience—that plausibly suggest Wexford has maintained a widespread custom or practice of ignoring [] inmates' medical needs." 2016 WL 6432578, at *3. The court further explained that the plaintiff's allegation of a Wexford policy was "unsupported by any facts regarding the experiences of other inmates," and there was nothing in the plaintiff's complaint that even indicated "what specific policy might lead to the systematic disregard of inmates' medical needs." *Id.* Similarly, in *Taylor v. Wexford Health Sources, Inc.*, No. 15 C 5190, 2016 WL 3227310, at *4 (N.D. Ill. June 13, 2016), the court dismissed the plaintiff's *Monell* claim because the plaintiff did "not allege that any other detainee suffered from similar issues" and only included "a conclusory reference to other prisoners' experiences." *See also Valazquez v. Williams*, No. 14-cv-9121, 2015 WL 4036157, at *4 (N.D. Ill. June 30, 2015) (the

allegation that Wexford had a policy and practice of denying psychotropic medicines to mentally disabled inmates was insufficient to state a *Monell* claim); *Winchester v. Marketti*, No. 11-cv-9224, 2012 WL 2076375, at *4 (N.D. Ill. June 8, 2012) ("What is fatal to the *Monell* claims, however, is that Plaintiff makes no attempt to plead a pattern of similar constitutional violations with any degree of factual specificity."); *Jones v. Feinerman*, No. 09 C 03916, 2011 WL 4501405, at *6 (N.D. Ill. Sept. 28, 2011) (dismissing *Monell* claim against Wexford because plaintiff alleged deliberate indifference that was limited "only to him").

Plaintiff, relying on *Ford v. Wexford Health Sources, Inc.*, No. 12 C 4558, 2013 WL 474494 (N.D. Ill. Feb. 7, 2013), argues that a deliberate indifference *Monell* claim can be supported by only an individual plaintiff's experience. In *Ford*, the plaintiff, an inmate at SCC, injured his back and then made near daily requests for medical attention. *Id*. at *1-3. Despite filing three formal grievances in one month, all of which he appealed to the Administrative Review Board, the plaintiff did not attend physical therapy until nearly two years after the injury. *Id*. The plaintiff then filed an emergency grievance, which was again denied. *Id*. at *3. After finally getting an MRI, plaintiff was scheduled to go to a pain clinic at a Chicago hospital, but was unable to visit the hospital because IDOC denied him sufficient medical restraints. *Id*. Given the plaintiff's consistent complaints, several formal grievances, and the plaintiff's other allegations about the institution's policies and practices, the Court found that the plaintiff had sufficiently alleged enough facts to support the inference that Wexford had "a widespread custom or practice of treating inmates' medical needs with deliberate indifference." *Id*. at *9.

Here, like the plaintiffs in *Arita* and *Taylor*, Plaintiff here makes only conclusory, factually unsupported allegations about the experiences of other inmates. (Am. Compl. ¶ 44.) ("Upon information and belief, Larry and Hart commonly failed to provide mental health

7

treatment to 'seriously mentally ill' or other mentally ill inmates at SCC for whom they have a personal dislike.") These allegations are exactly the type of boilerplate allegations of a widespread policy that courts in this district have consistently rejected. Further, unlike in *Ford*, Plaintiff's own allegations indicate that the Wexford employees were indifferent to Plaintiff because they "personal dislike[d]" him and not because they were carrying out a company policy to deny mental health treatment to all inmates. (Am. Compl. ¶¶ 44-45.) Plaintiff's allegations thus suggest that his alleged mistreatment was the isolated result of his personal relationships with Wexford employees. Plaintiff's Complaint does not allege sufficient facts to reasonably infer that there is an actual policy or practice at issue here. *See Grieveson*, 538 F.3d. at 774 ("it is necessarily more difficult for a plaintiff to demonstrate an official policy or custom based only on his own experience because what is needed is evidence that there is a true municipal policy at issue, not a random event.") (citations and quotations omitted). Accordingly, the Court grants without prejudice the Wexford's motion to dismiss Plaintiff's *Monell* claim.

## II.     Count II—*Respondeat Superior* Claim

Wexford moves to dismiss Count II, which seeks to hold the company responsible for the actions and omissions of its employees under the doctrine of *respondeat superior*. As Plaintiff concedes, it has long been settled law that, as with § 1983 cases against state actors, there is no *respondeat superior* liability for § 1983 actions against private corporations. *See, e.g., Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982); *Delgado v. Ghosh*, No. 11-CV-05418, 2016 WL 316845, at *4–5 (N.D. Ill. Jan. 27, 2016). The Seventh Circuit did recently express reservations about the inapplicability of *respondeat superior* liability to private corporations in § 1983 claims, but the court nevertheless concluded that "[t]he answer under controlling precedent . . . is clear . . . [r]espondeat superior* liability does not apply to private corporations under §

1983.  That precedent is binding here.  Accordingly, the Court grants Wexford's motion to dismiss Plaintiff's *respondeat superior* claim with prejudice.

## III. Compensatory Damages Under the PLRA

Given that the Court has dismissed both of Plaintiff's claims against Wexford, there is no need to address Wexford's argument that the Prisoner Litigation Reform Act only permits recovery of compensatory damages for physical injuries.

## CONCLUSION

For these reasons, the Court grants Defendant's Rule 12(b)(6) motion to dismiss.

**Dated:** March 1, 2017

                                          **ENTERED**

                                          */s/ Amy J. St. Eve*
                                          **AMY J. ST. EVE**
                                          **United States District Court Judge**