IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DONALD HAYWOOD, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 16-CV-3566 |
| | ) | |
| v. | ) | Hon. Amy St. Eve |
| | ) | |
| WEXFORD HEALTH SOURCES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Defendant Wexford Health Sources ("Wexford") has moved to dismiss Plaintiff Donald Haywood's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 72, Mot. to Dismiss Second Am. Compl.) For the following reasons, the Court denies Wexford's motion.

**PROCEDURAL HISTORY**

On March 23, 2016, Donald Haywood, an inmate within the Illinois Department of Corrections ("IDOC"), sued Wexford, certain Wexford employees, and several members of the IDOC medical staff (collectively, "Defendants") under 42 U.S.C. § 1983, alleging that they violated his constitutional rights by exhibiting deliberate indifference to his mental health needs. On March 1, 2017, the Court granted Wexford's motion to dismiss Plaintiff's First Amended Complaint without prejudice pursuant to Rule 12(b)(6) on the grounds that Plaintiff's complaint contained insufficient *Monell* allegations with conclusory, boilerplate claims about Wexford's policies and practices regarding its treatment of other inmates. (R. 66, First Order 7-8.) On March 15, 2017, Plaintiff filed a Second Amended Complaint, which Wexford has moved to

1

dismiss in the instant motion.[1]

## BACKGROUND

In considering this motion, the Court presumes familiarity with the background of this action as set forth in the First Order and does not recite a detailed background here. The Court will, however, provide a brief factual background, particularly as it pertains to the new allegations in Plaintiff's Second Amended Complaint.

Plaintiff, a prisoner at the Pontiac Correctional Center ("PCC") and formerly at the Stateville Correctional Center ("SCC"), alleges that, prior to his incarceration, he had a long history of diagnosed mental illness, including five suicide attempts. (*Id.* ¶¶ 1, 23-25.) Plaintiff has been diagnosed with depression, antisocial personality disorder, and post-traumatic stress disorder, and as a result, IDOC classified him as "seriously mentally ill" ("SMI"). (*Id.* ¶¶ 26-27.) Plaintiff alleges that, since June 2014, Defendants have failed to treat his mental illnesses, and have instead attempted to punish him when he has requested treatment. (*Id.* ¶¶ 140-41.) Specifically, he alleges that Wexford employees have failed to visit him or provide him with mental treatment and have instead falsified reports indicating that they visited him and that he received medical care. (*Id.* ¶¶ 42-45, 49-52.) Plaintiff also claims that Wexford employees have responded to his requests for medical treatment with repeated hostility—in particular, he asserts that, when he complained to two employees that he had not received treatment, one employee filed a disciplinary report against him and another threatened to discontinue his prescription medications. (*Id.* ¶¶ 62-64, 70-71.) Plaintiff alleges that his mental health disorders have worsened as a result of the inadequate treatment he has faced. (*Id.* ¶¶ 88.)

---

[1] In its First Order, the Court dismissed Plaintiff's *respondeat superior* claim with prejudice. (First Order 8-9.) Although Plaintiff repeated that claim in his Second Amended Complaint, he has since asked the Court to dismiss his *respondeat superior* claim. Accordingly, the Court dismisses Count II (Plaintiff's *respondeat superior* claim) with prejudice.

According to Plaintiff, many other inmates at SCC and PCC are SMI, and Wexford is responsible for ensuring that those inmates receive adequate mental health treatment while incarcerated. (*Id.* ¶ 31.) Plaintiff alleges that Wexford "maintains a widespread custom or practice among its employees of providing [SMI] inmates with inadequate mental health treatment." (*Id.* ¶ 32.) In support of this allegation, Plaintiff claims that, although SMI inmates often request treatment and file grievances in an effort to obtain treatment, Wexford employees (1) consistently deny or intentionally and erroneously find that mental health treatment requests from SMI inmates have no merit, (*Id.* ¶ 33); (2) place SMI inmates in (oftentimes prolonged) segregation; (3) falsify records to indicate fraudulently that SMI inmates have been provided mental health treatment; (4) delay mental health treatment; (5) intentionally exacerbate SMI inmates' mental health disorders and instigate their triggers to create a pretext for placing them in segregation, (*Id.* ¶ 34, 36); and (6) intentionally fail to investigate whether SMI inmates' alleged misconduct resulted in part or in whole from their mental illnesses. (*Id.* ¶ 35.)

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). In determining the sufficiency of a complaint under the plausibility standard, courts must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

## ANALYSIS

Plaintiff alleges that Wexford had policies and customs in effect that allowed Defendants to exhibit deliberate indifference to his mental health needs, causing him physical injuries and mental anguish in violation of the Eighth Amendment. In its motion to dismiss, Wexford makes two arguments: (1) Plaintiff has failed to state a claim under *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658 (1978); and (2) Plaintiff is not entitled compensatory damages because he has not sustained any physical injury.[2] The Court addresses each argument in turn.

### I. *Monell* Claim

Wexford argues that Plaintiff's *Monell* claims regarding Wexford's widespread custom and practice "amount to nothing more than conclusory boilerplate," that his allegations are still based on Wexford employees' personal issues with him, and that allowing Plaintiff's claim to proceed would effectively allow him to sue on a *respondeat superior* basis. Plaintiff responds that his Second Amended Complaint contains specific allegations that show a widespread policy, including Wexford's intentional and erroneous findings that requests for treatment have no merit, its placement of SMI inmates in segregation, its falsification of records to indicate that treatment

---

[2] As noted above, Wexford also argues that the Court should dismiss Plaintiff's *respondeat superior* claim. The Court need not address this issue because it has already dismissed this claim with prejudice, and Plaintiff has withdrawn his *respondeat superior* claim.

has been provided, its delays in mental health treatment, and its intentional exacerbation of mental health disorders.

In *Monell*, 436 U.S. at 693-94, the Supreme Court established that municipalities may be held liable for constitutional violations under § 1983. A plaintiff must show, however, that the alleged violation resulted from either (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) the decision of a public official possessing final policymaking authority on the issue in question. *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017) (citing *Monell*, 436 U.S. at 690-91). Wexford, a private corporation with whom IDOC contracts to provide healthcare services, may be held liable under *Monell*. *See, e.g., Minix v. Canarecci*, 597 F.3d 824, 832 (7th Cir. 2010). "To establish municipal liability, a plaintiff must show the existence of an 'official policy' or other governmental custom that not only causes but is the 'moving force' behind the deprivation of constitutional rights." *Teesdale v. City of Chicago*, 690 F.3d 829, 833-34 (7th Cir. 2012). Thus, to prevail on his *Monell* claim against Wexford, Plaintiff must show that "his injury was caused by a Wexford policy, custom, or practice of deliberate indifference to medical needs, or a series of bad acts that together raise the inference of such a policy." *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 796 (7th Cir. 2014). In addition, a plaintiff asserting a policy or practice claim ultimately "must demonstrate that there is a policy at issue rather than a random event." *Thomas*, 604 F.3d at 303. "This may take the form of an implicit policy" or "a series of violations to lay the premise of deliberate indifference." *Id.* (internal citations and quotations omitted).

The Seventh Circuit has not adopted bright-line rules regarding the quantity, quality, or frequency of conduct sufficient to constitute a widespread custom or practice such that *Monell*

liability attaches. *See id.*; *see also Arita v. Wexford Health Sources, Inc.*, No. 15-CV-01173, 2016 WL 6432578, at *2 (N.D. Ill. Oct. 31, 2016). The conduct complained of, however, must have occurred more than once, or even three times. *Thomas*, 604 F.3d at 303. Importantly, while "it is not impossible for a plaintiff to demonstrate the existence of an official policy or custom by presenting evidence limited to [one individual's] experience," it is difficult because "what is needed is evidence that there is a true municipal [or corporate] policy at issue, not a random event." *Grieveson v. Anderson*, 538 F.3d. 763, 774 (7th Cir. 2008).

Several courts in this District have denied Rule 12(b)(6) motions to dismiss *Monell* claims when the plaintiff factually alleged the specific ways in which a defendant carried out policies affecting multiple individuals. In *Ford v. Wexford Health Sources, Inc.*, No. 12 C 4558, 2013 WL 474494, *1-3 (N.D. Ill. Feb. 7, 2013), for example, the plaintiff, an inmate at SCC, injured his back and made near daily requests for medical attention. Despite filing three formal grievances in one month, the plaintiff did not attend physical therapy until nearly two years after the injury. *Id*. The plaintiff then filed an emergency grievance, which was denied. *Id*. at *3. After finally getting an MRI, plaintiff was scheduled to go to a pain clinic at a Chicago hospital, but was unable to visit the hospital because IDOC denied him sufficient medical restraints. *Id.* The Court found that the plaintiff's multiple, specific allegations regarding various Wexford employees' consistent indifference towards his medical needs—namely, delayed delivery of medical permits, ineffective or inappropriate administration of medication, and delayed scheduling of medical appointments—were sufficient to support an inference that Wexford had a "widespread practice custom or practice of treating inmates' medical needs with deliberate indifference." *Id.* at *9. Accordingly, the Court denied Wexford's motion to dismiss the plaintiff's *Monell* claim. *Id.*

Similarly, in *Baker v. Wexford Health Sources, Inc.*, No. 13 C 50193, 2014 WL 1346613, \*1-2 (N.D. Ill. April 4, 2014), the plaintiff injured his arm and requested medical treatment, which he received almost two months later. Thereafter, the plaintiff repeatedly requested further treatment because his injury was worsening, but Wexford employees repeatedly ignored his requests for over eight months. *Id.* at \*2-3. The court determined that the plaintiff had stated a plausible *Monell* claim because he alleged, based on his personal experiences, that the defendant maintained a policy of deliberate indifference by denying and delaying requests for referrals to outside specialists and maintaining inadequate staff levels. *Id.* at \*5. Likewise, in *Quinn v. Hardy*, No. 11 C 1173, 2013 WL 4836262, \*1 (N.D. Ill. Sept. 10, 2013), the plaintiff injured his foot and back, and a Wexford employee denied his repeated requests for treatment. As a result, the plaintiff underwent hunger strikes and became suicidal. *Id.* The court found that Wexford's treatment of the plaintiff was sufficient to support a plausible *Monell* claim that Wexford had a wider policy of indifference towards inmates' medical needs. *Id.* at \*4; *see also Harper v. Wexford Health Sources, Inc.*, No. 14-CV-04879, 2016 WL 1056661 (N.D. Ill. Mar. 17, 2016) (denying motion to dismiss where plaintiff's specific allegation that defendant maintained a widespread cost-cutting policy included references to the experiences of other inmates); *Neely v. Randle*, No. 12 C 2231, 2013 WL 3321451, \*6 (N.D. Ill. June 29, 2013) ("allegations of routine delays and denials of medical care and non-responsiveness to requests for care, combined with . . . specific factual allegations regarding how he was dealt with . . . are sufficient to state claims under *Monell*.").

Here, like in the cases discussed above, Plaintiff's allegations are sufficient to allege a *Monell* claim. Plaintiff has not merely alleged isolated instances of mistreatment nor, as Wexford argues, has he merely alleged with conclusory boilerplate that Wexford maintains a

7

policy of providing inadequate mental health treatment to SMI inmates. Instead, like the plaintiffs in *Ford*, *Baker*, and *Quinn*, he has included specific factual allegations regarding multiple Wexford employees' repeated and consistent indifference to his and other inmates' medical needs. Specifically, he has alleged that 11 different Wexford employees have not only repeatedly failed to respond to or treat his mental illness, but also have responded to his requests for treatment with hostility and punitive measures. (*See, e.g.* Second Am. Compl. ¶¶ 42-45, 47-50, 55-58, 62-65, 68-73, 81-85.) Plaintiff has also specifically alleged that his consistent and repeated mistreatment was the result of widespread Wexford customs and practices at SCC and PCC to (1) deny mental health treatment requests from inmates; (2) place SMI inmates in segregation; (3) intentionally and falsely indicate that SMI inmates have been provided treatment; (4) delay treatment; (5) intentionally exacerbate SMI inmates' mental health disorders; and (6) intentionally fail to investigate whether SMI inmates' alleged misconduct resulted in part or in whole from their mental illnesses. (*Id.* ¶¶ 31-38.) Viewing the allegations in the light most favorable to Plaintiff with all factual inferences and ambiguities resolved in his favor, Plaintiff has sufficiently alleged a *Monell* claim that is plausible on its face under the federal notice pleading standards. *Twombly*, 550 U.S. 570.

## II.     Compensatory Damages Under the PLRA

Wexford next argues that the Court should dismiss Plaintiff's complaint because the Prison Litigation Reform Act ("PLRA") does not permit recovery for purely mental or emotional injury without some prior showing of physical injury, and Plaintiff has failed to allege any physical injury. As Plaintiff noted in response, Wexford's argument fails for two reasons.[3] First, Plaintiff has in fact alleged a physical injury. Specifically, Plaintiff alleged that, as a result of his

---

[3] Wexford fails to acknowledge Plaintiff's arguments in its Reply. (*See generally* R. 81, Defs.' Reply.)

complaints regarding inadequate mental health treatment, "B-House" staff members physically assaulted him. (Second Am. Compl. ¶ 73.) Although Plaintiff has conceded that the extent of his injuries remains unknown, he nonetheless alleged that he was never treated for his physical injuries, which included lacerations, bumps, and bruises. (*Id.* ¶ 75.) Second, even if the Court found these allegations to be insufficient, the Seventh Circuit has unequivocally held that "physical injury [under the PLRA] is merely a predicate for an award of damages for mental or emotional injury, not a filing prerequisite for the federal civil action itself." *Calhoun v. DeTella*, 319 F.3d 936, 940 (7th Cir. 2003); *see also Thomas v. Illinois*, 697 F.3d 612, 614 (7th Cir. 2012); *Washington v. Hively*, 695 F.3d 641, 644 (7th Cir. 2012). As such, an allegation of physical injury is not required to survive a Rule 12(b)(6) motion.

Accordingly, the Court denies Wexford's motion to dismiss.

## CONCLUSION

For these reasons, the Court denies Defendant's Rule 12(b)(6) motion to dismiss.

**Dated:** July 26, 2017

                        **ENTERED**

                        **AMY J. ST. EVE**
                        **United States District Court Judge**