Case: 1:16-cv-03566 Document #: 385 Filed: 10/20/22 Page 1 of 16 PageID #:33869

FILED
10/20/2022
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

PC SCAN
SMB

United States District Court
Northern of Illinois Eastern Division

SCANNED at MENARD and E-mailed
10-20-22 by SS  16 pages
Date  Initials  No.

Donald Haywood R47947,
Plaintiff
-v-
Wexford, Et.AL.
Defendant(s)

No: 16-cv-3566

To The Chief Judge

## EMERGENCY MOTION FOR NEW APOINT OF COUNSEL WITH CAUSE AN FACT

NOW comes The Plaintiff Donald Haywood who has counsel but is Request that this court Please allow him to seek New Attorney threw the court's power! In 2016 this court found that Plaintiff should be given a Attorney because of his mental health issue and couldn't defend his self. Since then Plaintiff has wrote the court on the Attorney's he was given many time but they have Just kepted doing the same things. They told me things will change and for a second they did and then my Attorney (Bridget Geraghty) was given to me and me and her came up with diffrent things to make sure i am feeling cared for. Since then she lefted an went else where to be a Attorney. And befor she left Attorney (Nicole Schult) told me i was not going to get my legal calls everyweek that infact we agreed on if i take my last motion back on them. I just want someone that is going to fight for my treatment because Menard is apart of (IDOC) It's not a déffrent state. But They saying like it is. Now i went from two calls

Page 1 of 5

Every week to None. She the new attorney who is the Legal Director of Uptown People's Law Center and the Attorney that the has told to take on my case want even call. I talked to Attorney (Heard Hirshman) on the pay phone more then the Attorne who made me signed this crazy retainer agreement. In fact I want to take it back and read it but he (Alan Mills) wanted me to sign it right their, so I did it and never read it an to another prisoner was telling how Uptown People's Law Center treated him. He ask to read it and I allow him to go over it. After he say do you agree with all that? I said yeah, he say did you read it? I said No. He say you have to pay for him coming to see you, Hotel fees and anything else on that paper and if you cop out you will have to give him Half as long as it's over $100,000.00. And give up 33% of your own money. When I bright this to him (Alan Mills) told me that he dont do free case and i have to pay him for his work and i signed this contrack it's on me for not reading it. That was the last time he come a saw me. He told me if I fired him he will take me to a place called arbitrator court. (see Exhibit # B) 5 pages. Plaintiff is haveing alot of issues and he is saying it's causeing him all

pages (2 of (5)

Kinda stress which is causeing his heart to hurts. Plaintiff is force to be in his cell 24 hours aday 7days a week. Plaintiff has wurte asking why cant he get any Mental Health treatment or groups. All menard Mental Health Staff is doing is forceing me in to seg. InfAct on 9-1-2022 Plaintiff swollowed a screw hole and he got a legal call and told Uptown People's Law Center what his issue is and they thing is they have nothing to do with what's going on with his mental health Right Now only what happen in the pass at Stateville CC and Pontiac CC. Plaintiff thought that if a issue contiun from one prison to another EAch person call be held Lable? They is Tampersing with my files Acting as If i am geting treatment from them. At this point I cant Even take my medications becAuse the nurse has told me she was going to kill me. As of today I have not heard from Not one of my Attorney's in over Three weeks, Since 8-19-2022 when (Bridget Geraghty) lefted Uptown People's Law center I have only got 3 Phone calls and is not being treated as a person who is being forced to pay. From day one my Attorney asked of me to Just fall back and Not ask for money and he can get me treated. I Question his ways

(3) of (5)

to help me get treatment? Because this court is going off the work he has done for other people when it's cases like Rasho Et.AL -vs- Director Roger E. Walker JR, Et.Al Case # 07-cv-1299 (C.D. ILL.) They dont Even follow that in no Prison. Since I came back to IDOC on 2-2-2022 I have only had like 3 one on one with a (MHP) Saw the Phy Doctor like 4 or 5 times and only went to Group for No more then 2½ months of my 5 months I did in Seg. Because I was on this thing mental Health allow the %'s get away with called Pink TaGed. Where the inmate is Black Balled.

This motion Needs to be Adress because if Wexford Health Sources is allowed to keep Changeing attorney's then why cant the Plaintiff? Plaintiff feels as if he should be treated better by these Attorney's who is going to get payed No matter what Even if Plaintiff Losses. This Court Can give Plaintiff another Law firm like Lovey & Lovey, Winston an Strong, Flexment, or places that deal with these issues. My old attorney just told me to Rewrite yall and get this on Records because i should have to (1) Be forced to keep a law firm that is takeing advage of me (2)

PAGE (4) of (5)

OK with my suffering. And i am not Kool with this.

My Last Testing I took showed I had a (6.0) grade Read and a 4.2 math and a Average Score 5.1 which i have to go to Speacial Schooling. (see EXHiBit #E) on September 30th, 2019 The Judge on my Case Elain E. Bucklo Ruled that because this case deal with a Lot of Medical issues, i need a Attorney and gave me UPTown People's Law Center See EXHiBit #1-A 5 pages

Wherefore Plaintiff PRays that this Court allow him to change attorney's but Keep (MR. Heorld Hirshman).

-S- Donald Haywood
Donald Haywood
R47947
P.O. Box 1000
Menard IL 62259

Proof of Service

On 10-17-2022 I E-Filed this motion Threw our Prison Law Library with 5 EXHiBit's with Letters from attorney asking for Help.   Donald Haywood

Page (5) of (5)

EXHIBIT 1-A Pages 1 to 5

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Donald Haywood | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 16 C 3566 |
| | ) | |
| Wexford Health Sources, Inc., et al. | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

Thirty-four year old Donald Haywood has a long history of diagnosed mental illnesses, including depression, antisocial personality disorder, bipolar disorder, and post-traumatic stress disorder. He spent several years of his youth in juvenile correctional institutions, and he has been in custody for the entirety of his adult life. He is currently serving a lengthy sentence for first degree murder on an accountability theory.[1]

---

[1] The evidence at Haywood's trial established that Haywood agreed to act as a "look out" for his brother Karl during the 2003 robbery of a cab driver. Specifically, Haywood hid a gun Karl gave to him in the waistband of his pants as the brothers traveled in the cab, then gave Karl the weapon upon a signal from him. Karl directed the driver into a parking lot at gunpoint and demanded her valuables. After the driver complied, Karl ordered Haywood to shoot her. Haywood refused and began walking away from the vehicle. Karl then grabbed the gun back from Haywood and fatally shot the driver himself. *See People v. Haywood*, 2016 IL App (1st) 142833-U at ¶ 10, 2016 WL 722 8783, *2 (Ill. App. Ct. Dec. 12, 2016); *People v.*

In this action, Mr. Haywood claims that the conditions of his confinement and the inadequate mental health treatment he has received at the Illinois Department of Corrections' Stateville and Pontiac Correctional Centers violate the Eighth Amendment's prohibition of cruel and unusual punishment. Among other things, Mr. Haywood complains of being held in filthy and unsanitary conditions of segregation[2] for up to a year at a time for seemingly minor infractions (possessing a cell phone, for example), during which time he received little to none of the mental health therapy his designation as an "SMI" inmate (i.e., seriously mentally ill) required. He further testified that he was placed in segregation as punishment for requesting the mental health services his SMI designation warranted, and that at some point the designation was inappropriately and "maliciously revoked." Other SMI inmates at Stateville and Pontiac are similarly mistreated, Haywood claims, as part of a widespread custom or practice by defendant Wexford, which includes among other features routinely denying their requests for mental health treatment and intentionally provoking incidents that are likely to land them in disciplinary segregation. Haywood also alleges that Wexford staff tampers with SMI inmates'

---

*Haywood*, 2012 IL App (1st) 111554-U at ¶ 3, 2012 WL 6861632, at *1 (Ill. App. Ct. 2012).
[2] Haywood's complaint cites the presence of black mold in his segregation cell, as well as insect infestation, encrusted human waste, and leaky light fixtures.

2

medical records to make it appear that they are receiving care that they are not in fact receiving.

These are serious and disturbing allegations warranting meaningful investigation, but plaintiff's recruited counsel has undertaken none. Indeed, his attorneys failed to conduct any discovery at all. See Tr. of 06/21/2019 Hr'g. at 6 ("THE COURT [to plaintiff's counsel]: It doesn't look like you've really done any discovery. MR. SMITH: We have not, judge.").[3] Yet Mr. Haywood's allegations are not frivolous; in fact, they echo those asserted in *Rasho, et al. v. Director Roger E. Walker, Jr., et al.*, Case No. 07-cv-1298 (C.D. Ill.), a case that culminated in a class settlement benefiting a class of which Mr. Haywood appears to be a member.[4]

---

[3] Mr. Haywood's recruited attorney did not ask him even a single question at his deposition to substantiate the allegations made in his complaint. Further, notwithstanding my order directing that "[c]ounsel familiar with the case shall be present" at the June 21st hearing, the attorney who appeared on plaintiff's behalf had filed his appearance just two days before the hearing and admitted that he did not know why no discovery had been conducted "yet" (more than a year after the close of fact discovery); was "not sure" of the charges on which Mr. Haywood was convicted; and had no knowledge of the status of his criminal appeal. Tr. of Hr'g. at 7-8.

[4] Although the attorney who appeared at the June 21 hearing provided an unresponsive answer to my question about the effect of the *Rasho* settlement on his claims, see Tr. of Hr'g. at 8-9, my review of the docket in that case suggests that Mr. Haywood is a member of the settlement class, and that although he filed an objection to the class settlement, see DN 429 in 07-cv-1298, the court determined that the injunctive relief provided in the settlement was "binding on all class members," and that "no class member would be able 'OPT OUT.'" See Text Only Order of 12/22/2015.

3

If plaintiff's deposition testimony—the only evidence his attorneys have presented in opposition to defendants' summary judgment motions—reflects a reasonably accurate account of his long periods of segregation, the events that triggered them, and the conditions of his confinement, a fact-finder could conclude that *someone* employed by Wexford or IDOC was deliberately indifferent to his serious medical condition and/or his right to humane conditions of confinement, or that even absent a constitutional violation by one or more of its individual employees, Wexford could be liable for damages pursuant to *Monell v. Department of Social Services of New York,* 436 U.S. 658 (1978), based on a widespread custom or practice of intentionally denying adequate mental health services to SMI inmates. *See Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 305 (7th Cir. 2010).

Though civil cases such as this do not implicate the Sixth Amendment right to counsel, nor is there an automatic right to recruited counsel under 28 U.S.C. § 1915(e)(1), *see Diggs v. Ghosh*, 850 F.3d 905, 911-12 (7th Cir. 2017), it appears from the nature of Mr. Haywood's claims and from the substantial medical record that Mr. Haywood needs counsel and that the services of competent attorneys meaningfully engaged in the proceedings might make a difference in the outcome of Mr. Haywood's case. *See Henderson v. Ghosh*, 755 F.3d 559, 566 (7th Cir. 2014) (cases involving "complex medical evidence are typically more difficult" for pro se

4

litigants); *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (identifying the factors courts should consider in exercising discretion to recruit counsel for indigent civil litigants). Accordingly, defendants' motions for summary judgment are denied without prejudice. New counsel will be recruited to conduct discovery and to represent plaintiff in all further proceedings.

**ENTER ORDER:**

*[signature]*

**Elaine E. Bucklo**
United States District Judge

Dated: September 30, 2019



4413 North Sheridan | Chicago, Illinois 60640
Phone: 773.769.1411 | Fax: 773.769.2224
www.uplcchicago.org

# RETAINER AGREEMENT

THIS AGREEMENT is entered into between Donald Haywood (hereinafter, "Client"), and the Uptown People's Law Center (hereinafter, "Counsel").

1. Client wishes Counsel to represent him in investigating, prosecuting, and settling all claims asserted in *Haywood v. Wexford*, No. 17cv 3566 (N.D. Ill.).

2. Client understands that the Uptown People's Law Center is a not-for-profit legal clinic and that from time to time law students and other interns may work on Client's matter; however, such work will always be performed under the direct supervision of a licensed attorney employed by Counsel.

3. Communications between Counsel and Client are generally confidential. Therefore, Counsel will not discuss any confidential information about Client's case with anyone without Client's express permission.

4. Counsel agrees to keep client reasonably informed of the progress of the case, and agrees not to make any substantive decisions in the case (for example, dropping claims or parties) without consulting with the client. The Uptown People's Law Center has a general policy against accepting telephone calls or e-mails from prisoners, as such calls are not confidential. Counsel may, however, from time to time arrange for confidential legal calls with Client. In return, Client agrees to keep Counsel reasonably informed of any changes in

Client's situation which may impact the case. This includes, but is not limited to, advising counsel of any transfers or other change of address.

5. If Client obtains financial recovery as a result of the representation, either by settlement or by verdict, then Counsel shall receive one third (33%) of that amount as the compensation to Counsel for the representation.

6. Client understands that, in addition to any recovery Client may receive, the Court may also award statutory attorneys' fees to Counsel. If statutory attorneys' fees are awarded by the Court after settlement or trial, the compensation to Counsel for the representation shall be either (a) the total amount of statutory fees awarded or (b) one third of the total of the Client's recovery plus the statutory fees, *whichever is greater*. The following two examples illustrate this division. Example 1: $100,000 judgment. $20,000 fee award. $100,000 + $20,000 = $120,000 x one third = $40,000 total fee to Counsel; $80,000 to Client. Example 2: $200,000 judgment, $200,000 fee award. $200,000 + $200,000 = 400,000 x one third = $133,333. Since this is smaller than the $200,000, Counsel gets $200,000 and Client gets $200,000.

7. Counsel may, in their judgment, associate with other counsel to represent Client in the litigation. If additional counsel are brought in to work on behalf of Client in the litigation, Client shall be informed of that fact and shall be informed of any arrangements among counsel for the sharing of fees. If co-counsel is brought in to the case, a separate representation agreement will be executed.

8. If any amounts paid by any opposing party in settlement or judgment with respect to the representation are paid in periodic installments, then all such payments shall

be divided between Client and Counsel on a pro rata basis upon the amounts due to Client and Counsel pursuant to the provisions of this Agreement.

9. Counsel expects to incur out-of-pocket expenses on behalf of Client, for example, court costs, court reporter costs, expert witness fees and expenses, travel expenses and the like. Counsel will advance all such expenses on behalf of Client.

10. All expense advances shall be reimbursed by Client out of any recovery Client may receive. Client's obligation to reimburse Counsel for advanced expenses shall be in addition to Client's obligations regarding compensation of Counsel. Any recovery Client may receive will be applied first toward reimbursement to Counsel of expenses advanced by Counsel. Thereafter, the recovery shall be divided as set forth in paragraphs 3 and 4 of this Agreement.

11. If Client's recovery is insufficient to pay all expenses advanced by Counsel, Client will not be responsible for any remaining expenses advanced by Counsel. If the Court decides that some or all of the costs incurred by Counsel should be paid by any defendants in any action, then all such costs will be paid to Counsel and will reduce Client's obligation to pay expenses. The court's decision not to order some or all expenses to be paid by any defendants in any action will not relieve Client of his obligation to pay all remaining unpaid expenses.

12. In the event that prior to the entry of a judgment or settlement, Client dismisses Counsel as his attorneys or Client voluntarily dismisses or fails to pursue litigation arising from the representation, Client agrees to pay Counsel based on principles of *quantum meruit* (that is, the fair and equitable value of the services provided by Counsel) which Client

specifically agrees may be based upon the compensation percentages and reimbursement of expenses described in this Agreement.

13. In addition to any statutory attorney's liens and not in derogation of any statutory attorney's liens, Client hereby assigns to Counsel any recovery arising from the representation for their fees and expenses advanced or incurred. Client expressly authorizes Counsel to receive any recovery, whether by settlement or judgment, directly from the defendant(s). Counsel is expressly authorized to deduct their compensation, expenses, statutory fees, and Court awarded expenses, as set forth in this Agreement, from the total recovery before providing the remainder amounts due to Client from those sources of recovery.

14. Counsel has not expressed any opinion nor made any promise or representation as to the value or eventual outcome of client's case or claims. Nor has counsel expressed any opinion nor made any promise or representation as to the potential amount of their hourly fees or expenses associated with their representation of Client. By signing this Agreement, Client expressly acknowledges that Client is not relying on any such promise or representation in entering this Agreement.

15. Counsel and Client acknowledge and understand that the representation anticipated by this Agreement involves many unknowns and risks. In light of these risks and unknowns, Counsel retains the right in its sole discretion to withdraw or limit its representation of Client, consistent with any applicable Rules of Professional Responsibility, at any time.

16. If any part of this Agreement is deemed by a Court or arbitrator to be invalid, then it is the parties' intention that all other provisions of the Agreement shall be fully binding and enforceable.

17. This Agreement may be executed in several counterparts, all of which together shall constitute one and the same instrument, and have the same force and effect as though all the parties had executed the same document at the same time.

18. The effective date of this Agreement is the last date signed by the last party to sign this Agreement.

19. This Agreement represents the complete agreement of the parties with respect to Counsel's services to the Client, and supersedes any prior oral or written statement of Counsel or the Client. This Agreement may only be amended by a written contract or letter signed by all parties.

20. This Agreement shall be governed by the substantive laws of the State of Illinois.

21. In the event that any dispute arises under this Agreement that cannot be amicably resolved by the parties, the parties agree that they will submit the dispute to binding arbitration with the Chicago Bar Association by a single arbitrator in the City of Chicago. Each party will bear its own costs and attorneys' fees in connection with any such arbitration.

22. Each party named and signing this Agreement expressly represents and warrants that the person executing the Agreement on its behalf is fully and duly authorized to bind the party to all terms and conditions expressed in this Agreement.

23. This agreement consists of 6 pages, including this signature page.

APPROVED AND AGREED TO:

CLIENT

Donald Haywood            11/12/19
                          Date

COUNSEL
Uptown People's Law Center

Signature: _____    11/12/19
By: Alan Mills, Executive Director   Date