IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Donald Haywood, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case no.: 16-cv-3566 |
| v. | ) |
| | ) Honorable Elaine E. Bucklo |
| Wexford Health Sources, *et al*, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' MOTION TO EXCLUDE
THE EXPERT TESTIMONY OF CRAIG HANEY AND DAVID RAKOFSKY**

NOW COME, Defendants, Darrin Hunter, Tarry Williams, Charles Best, and Beth Hart, by and through their attorney, Kwame Raoul, Attorney General of the State of Illinois, and pursuant to Federal Rules of Evidence 702 and *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), respectfully move to exclude the proposed testimony of Craig Haney and David Rakofsky. In support of their motion, the Defendants state the following:

**INTRODUCTION**

Plaintiff intends to present three general factual claims to the jury: (1) Plaintiff alleges deliberate indifference to his medical needs against Defendant Hart for failing to refer Plaintiff for a more substantial assessment of his needs and appropriate treatment when Plaintiff refused to take his psychotropic medication while in segregation from July 30, 2014 to October 20, 2015; (2) Plaintiff alleges deliberate indifference to his medical needs against Defendant Best, an adjustment committee chairman who failed to solicit a mental health report and allegedly failed to consider Plaintiff's mental health when imposing a year in segregation; (3) Plaintiff also alleges a conditions of confinement claim for the conditions of his cell in F-House against Defendant Hunter and

1

William, alleging presence of mold, smell of urine, feces leaking down the floors and presence of rats, for thirty days. To prove these allegations, Plaintiffs disclosed two experts: Dr. David M. C. Rakofsky, a licensed psychologist, and Dr. Craig Haney, a Professor in Psychology. Dr. Haney opines on the effects of segregation on individuals in general and Dr. Rakofsky provides a psychological evaluation and report of the Plaintiff.

Plaintiff intends to use these experts, not to opine on the specific conditions, but to prejudice the jury by generalized facts and emotion, and as an indictment against the IDOC or the State of Illinois---not the Defendants. Dr. Haney will testify generally about the negative impacts of segregation and Dr. Rakofsky will testify about Plaintiff's history and his post-lawsuit diagnosis of Plaintiff after learning about his life. But neither expert know who the Defendants are. Simply put, neither one will aid the jurors in understanding the issues before them and thus should be barred from testifying.

## ARGUMENT

Plaintiff's experts both fail to provide a proper opinion within the meaning of Federal Rule of Evidence 702 or *Daubert v. Merrill Dow Pharmaceuticals, Inc*., 509 U.S. 579, 589 (1993). Dr. Haney's conclusory opinions that Plaintiff suffered adverse affects for being in segregation does not stem from information about the specific segregation conditions between July 30, 2014 to October 20, 2015, from speaking to Plaintiff or from any knowledge of the alleged actions of the Defendants. Dr. Rakofsky's opinion on Plaintiff's mental health stems from the tough and emotionally scarring childhood to his adolescent witnessing murders to his experience in Cook County Jail and IDOC. These opinions are irrelevant and unhelpful to the trier of fact. Rather, they serve to indoctrinate the jury and distract them from the facts and issues concerning the specific defendants.

### A. Admissibility of Expert Testimony under *Daubert*

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and, by extension, the principles referenced in *Daubert*, 509 U.S. at 589. Rule 702 allows a witness "who is qualified as an expert by knowledge, skill, experience, training, or education" to testify to their opinions if four requirements are met: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. "The district court functions as a gatekeeper with respect to testimony proffered under Rule 702 to ensure that the testimony is sufficiently reliable to qualify for admission." *Mihailovich v. Laatsch*, 359 F.3d 892, 918 (7th Cir. 2004), citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). District courts must employ a three-part analysis before admitting expert testimony: (1) the expert must be qualified as an expert by knowledge, skill, experience, training, or education; (2) the expert's reasoning and methodology underlying his testimony must be scientifically reliable; and (3) the expert's testimony must assist the trier of fact in understanding the evidence or to determine a factual issue. *See Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010). "The goal of Daubert is to assure that experts employ the same 'intellectual rigor' in their courtroom testimony as would be employed by an expert in the relevant field." *Jenkins v. Bartlett*, 487 F.3d 482, 489 (7th Cir. 2007). The "'measure of intellectual rigor will vary by the field of expertise and the way of demonstrating expertise will also vary.'" *United States v. Conn*, 297 F.3d 548, 556 (7th Cir. 2002), quoting *Tyus v. Urban Search Mgmt.*, 102 F.3d 256, 263 (7th Cir. 1996).

**B. Dr. Rakofsky proposes to speak to Plaintiff's mental health generally, but not about any Defendant's conduct, or how their conduct specifically affected Plaintiff.**

Dr. Rakofsky's testimony and report is not scientifically reliable. The report is a narrative recounting of Plaintiff's experiences from childhood to August 8, 2022. Exhibit 1, Clinical and Forensic Evaluation of Donald Haywood, pg. 2. The report fails to correct inaccurate statements made by Plaintiff nor considers the actions of Plaintiff that impeded any treatment IDOC attempted to provide him.

Dr. Rakofsky's report simply conveys what he was told by Plaintiff about his life. Ex. 1, pg. 2-5. It is well established an expert witness cannot simply summarize the out-of-court statements of others as his testimony. *Untied States v. Brownlee*, 744 F.3d 479, 482 (7th Cir. 2014). Likewise, "an expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence." *Hostetler v. Johnson Controls*, 2020 U.S. Dist. LEXIS 151437 at *16-17 (N.D. Ind. Aug. 21, 2020), quoting *Newman v. McNeil Consumer Healthcare*, 2013 U.S. Dist. LEXIS 113438 at *20-21 (N.D. Ill. Mar. 29, 2013). Acting simply as a narrator of the facts does not convey opinions based on an expert's knowledge and expertise; nor is such a narration traceable to a reliable methodology. *Kraft Foods Glob., Inc. v. United Egg Producers, Inc.*, 2023 U.S. Dist. LEXIS 170965 at *7 (N.D. Ill. Sept. 19, 2023). Dr. Rakofsky offers nothing but a regurgitation of what the Plaintiff shared about his life and experience. This is not the purpose of an expert.

Furthermore, Dr. Rakofsky's report does not acknowledge the discrepancies in what Plaintiff shared and what was present in the medical records reviewed by the expert. For example, Plaintiff lied during his interview when he state that prior to the interview, he never talked about the sexual abuse by his aunt. Ex. 1, pg. 3. Dr. Rakofsky admits that this was a false statement.

4

Exhibit 2, Deposition of Dr. David Rakofsky taken on December 8, 2022, 55:6-17. Yet, this goes unacknowledged in his report. Ex. 2, 55:6-17; Ex. 1, pg. 3. "*Based on [Plaintiff's] account,*" Dr. Rakofsky concludes that "that the services [Plaintiff] received while in IDOC custody have been insufficient to provide Mr. Haywood relief from his psychological suffering." (Ex. 1, pg. 7.

While Dr. Rakofsky forms opinions, they are based upon deficient investigation and a flawed review of the available documents in this case. For instance, Dr. Rakofsky opines, "a review of the mental health documentation provided by IDOC demonstrates the woeful inadequacy of the treatment Mr. Haywood received from Mental Health Providers while in custody at Stateville. Ex. 1, pg. 15. Dr. Rakofsky notes that from September 4, 2013 to August 1, 2017, Plaintiff was seen by 48 unique mental health providers. Ex. 1, pg. 15. However, he does not know why Plaintiff was seen by 48 unique mental health providers Ex. 2, 115:12-116:9. Dr. Rakofsky opines that most visits lacked privacy because the Mental Health Providers met with Plaintiff in front of his cell. Ex. 1, pg. 15. However, Dr. Rakofsky does not know why meetings were held in front of Plaintiff's cell nor can Dr. Rakofsky confirm whether Plaintiff was surrounded by people. Ex. 2,117:5-16. He points out that in Stateville, Mr. Haywood was most frequently seen by Mental Health Provider S. Cheshareck, who saw him 39 times. Ex. 1, pg. 8. He notes that 32 of these visits took place in front of Plaintiff's cell. Similarly, Rakosfsky notes that Defendant Hart saw Plaintiff 33 times. Ex. 1, pg. 8. Of those visits 29 were segregation rounds conducted in front of his cell. Ex. 1, pg. 8. Between Stateville and Pontiac, Plaintiff had 266 contacts with Mental Health Providers, 115 of which took place in front of his cell. Ex. 1, pg. 8. Dr. Rakofsky cannot explain why this was the case, nor does he know if, Plaintiff was misbehaving during those instances. Ex. 2, 120:8-13. Dr. Rakofsky does not even account for the IDOC policy stating that individuals in custody, who are in segregation *must* be seen in front of their cell. Ex. 2, 120:15-18. Instead, Dr. Rakofsky chooses

5

not to acknowledge the policy and does not bother to find out why such a policy exists. Ex. 2, 120:19-20. Of all the visits Plaintiff had in custody, Dr. Rakofsky cannot opine on how many one-on-one visits were cancelled due to Plaintiff's own misbehaviors. Ex. 2, 120:21-24. Dr. Rakofsky notes that the average time the one-on-one visits last is 16 minutes. Ex. 1, pg. 8. However, yet again, Dr. Rakofsky cannot explain why that was the case. Ex. 2, 121:1-4.

Dr. Rakofsky opines that the services Plaintiff received were insufficient because they lacked confidentiality and privacy. Ex. 1, pg. 15. However, like most things, Dr. Rakofsky cannot say whether therapy was, objectively speaking, impactful on Plaintiff. Dr. Rakofsky's opinion that one-on-one sessions made a difference on Plaintiff's mental health stems from Plaintiff's own testimony. It is not backed by a review of the record. Dr. Rakofsky states that therapy provided at Ethan Allen as a juvenile was impactful on the Plaintiff because Plaintiff said so. Ex. 2, 42:4-12. This report is not reliable because it accounts for one narrative, which is of the Plaintiff. Dr. Rakofsky can't say or opine that Plaintiff did better when he received one on one private visit. Ex. 2, 22:10-19. In fact, Dr. Rakofsky admits that it is virtually impossible to track Plaintiff's progress as a result of one-on-one sessions, confidentiality, and being in groups. Ex. 2, 126:5-13. Dr. Rakofsky's expert opinion or testimony does nothing to aid the jury.

The Court should bar Dr. Rakofsky's testimony also because it lacks relevance and would actually unduly prejudice the jury. Plaintiff alleges two claims for deliberate indifference to his medical needs. First, against Defendant Best, alleging that he failed to obtain a medical health report before disciplining Plaintiff with one year in segregation. Second, against Defendant Hart, alleging that she did not escalate Plaintiff's failure to take medicine to mental health providers. Dr. Rakofsky's expert opinion does not speak to either of these claims. However, as explained, Dr. Rakofsky's opinion about Plaintiff's medical condition and treatment received at IDOC is based

6

on Plaintiff's testimony. Dr. Rakofsky does not dive deep into why mental health providers were meeting Plaintiff outside his cell. Ex. 2, 117:14-16. He does not know why there were limited numbers of one on one sessions. Ex. 2, 120:21-24. Dr. Rakofsky testified that Plaintiff received many episodes of care, each with treatment notes for Plaintiff's post-traumatic stress disorder. Ex. 2, 33:14-18. Yet, these treatments never come up in the report.

Dr. Rakofsky concludes that Plaintiff suffered adverse mental health because he was not taking his medication. Ex. 2, 35:16-19, However, Dr. Rakofsky never reviewed Plaintiff's medical administration records. Ex. 2, 34:13-15. Medication is not Dr. Rakofsky's area of expertise, yet freely opines that not taking medication had a negative impact on Plaintiff. Ex. 2, 36:3-7. Additionally, Dr. Rakofsky cannot speak to when Plaintiff elected to stop taking his medication nor how many times Plaintiff did not take medication for his mental health disorder. Ex. 2, 36:9-24. For these reasons, Dr. Rakofsky's testimony and opinions fails to assist the jury in determining any legal and factual issues of this case.

### C. Dr. Haney opines about the probable consequence of solitary confinement and fails to form an opinion about Plaintiff's condition in segregation from July 30, 2014 to October 20, 2015.

Similarly, Dr. Haney's opinion and testimony fail to assist the jury in understanding the evidence or determining any factual issue. Dr. Haney does not opine on how Plaintiff was impacted by segregation. Instead, the purpose of Dr. Haney's testimony is to indoctrinate the jury against a non-party: the State of Illinois's practice of using segregation as a disciplinary and security tool in maximum-security settings.

Dr. Haney opines on the "negative psychological consequences of … restrictive housing for both non-mentally ill and mentally ill persons," "the extent to which prisoners in restrictive housing in IDOC at Stateville and Pontiac during approximately 2014 to 2021 are subjected to

conditions of confinement that place them a serious risk of psychological harm. Exhibit 3, Expert Declaration of Craig Haney, PH.D., J.D., Pg. 5. However, Dr. Haney's opinions are not based on any interview with Plaintiff and thus, is not based on facts or impressions from the relevant time period, July 30, 2014 to October 20, 2015, when Plaintiff was in segregation. Ex. 3, pg. 10. Dr. Haney did not even review Plaintiff's mental health files. Exhibit 4, Deposition of Dr. Craig Haney taken on August 18, 2023, 24:14-22. Dr. Haney has no impression of Plaintiff's disciplinary record. Ex. 4, 25:3-21. In short, Dr. Haney knows no specific information about the Plaintiff. Aside from the general proposition in his report that *segregation can be bad*, Dr. Haney has no opinions about how segregation in *this* case affected *this* Plaintiff. And, he is not clinically qualified to do so, as he has never practiced psychology in a clinical setting and is a mere academic researcher with no practical experience.

Expert testimony is helpful to the jury if it concerns a matter beyond the understanding of the average person, assists the jury in understanding the facts, or puts the facts in context. *United States v. Welch*, 368 F.3d 970, 974 (7th Cir. 2004). "Where expert testimony addresses an issue of which the jury is already generally aware, such testimony does not assist the jury." *Id*. Put another way, an expert must offer a "value-add, meaning some 'specialized knowledge' that would help the jury." *Kraft Foods Glob., Inc. v. United Egg Producers, Inc.*, 2023 U.S. Dist. LEXIS 170965 at *5 (N.D. Ill. Sept. 19, 2023). If an expert merely reads the evidence, and offers his spin on the facts, that expert isn't telling the jury more than it already knows. *Id*; see also *United States v. Hall*, 93 F.3d 1337, 1343 (7th Cir. 1996) ("Unless the expertise adds something, the expert at best is offering a gratuitous opinion, and at worst is exerting undue influence on the jury that would be subject to control under Rule 403."); see also *Baldonado v. Wyeth*, 2012 U.S. Dist. LEXIS 68691, at *4 (N.D. Ill. May 17, 2012). An expert who simply offers his spin on the evidence is helpful to

8

the lawyer, but not helpful to the jury. *Kraft Foods*, 2023 U.S. Dist. LEXIS 170965 at *5-6. "An expert must testify to something more than what is 'obvious to the layperson' in order to be of any particular assistance to the jury." See *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001); *Taylor v. Ill. Cent. R.R. Co.*, 8 F.3d 584, 585-86 (7th Cir. 1993) (affirming the exclusion of expert testimony where "any lay juror could understand th[e] issue without the assistance of expert testimony"); *Sullivan v. Alcatel-Lucent USA, Inc.*, 2014 U.S. Dist. LEXIS 97011 at *15-16 (N.D. Ill. July 17, 2014) ("Expert testimony does not assist the trier of fact when the jury is able to evaluate the same evidence and is capable of drawing its own conclusions without the introduction of a proffered expert's testimony"). "[M]erely reading and interpreting documents without drawing on any additional expertise" is not helpful, and thus not admissible. See *Sullivan*, 2014 U.S. Dist. LEXIS 97011, at *16. Dr. Haney serves one purpose and that is to inform the jury that segregation has a negative impact on individuals in custody.

Dr. Haney's report offers nothing to assist the jury to evaluate the evidence or to understand the issues that Plaintiff will present. In his expert report, Dr. Haney includes substantial details about his personal observations of F-House at Stateville Correctional Center in 2015---but only after Plaintiff no longer resided there. Ex. 3, pg. 40. Dr. Haney visited Stateville in 2015, not during the same time period Plaintiff stayed in F-House. Ex. 3, pg. 40. Dr. Haney describes that the cells are arranged in a circle with a guard tower in the center. Ex. 3, pg. 40. The cells had bars, however, since have been covered with some sort of high security plastic. Ex. 3, pg. 40. Over the years, the plastic cell covers have become so scratched, burned and fogged that it is impossible to see inside the cell. Ex. 3, pg. 41. Dr. Haney observed numerous broken windows in the cells, many sinks that did not work, and rust and filth in every cell and shower he saw. Ex. 3, pg. 41. Individuals in custody that Dr. Haney spoke to informed him of the mice and roach infestation. Ex. 3, pg. 41. Dr.

9

Haney personally observed birds flying around. Ex. 3, pg. 41. Furthermore, Dr. Haney notes amplified sound. Ex. 3, pg. 42. He states that there was a constant, extremely loud cacophony sound that was actually painful to experience. Ex. 3, pg. 42. Overall, Dr. Haney describes F-House as dirty, decrepit, and dilapidated. Ex. 3, pg. 42. Dr. Haney concludes that it is "such a noxious environment that prisoners would be likely to suffer" psychological harm. Ex. 3, pg. 42.

First, the only person who can testify to the conditions he personally experienced at F-House from July 30, 2014 to October 20, 2015 are those individuals who were present during that time period. Dr. Haney admits he was not there. His observations cannot establish what Plaintiff actually encountered from his cell while in segregation, particularly because visits from outsiders (like Dr. Haney) to a segregation unit often prompt atypical inmate behavior and noise.

Second, Dr. Haney provides his professional opinion that confinement to restrictive housing in the conditions that were present in F-House, at the time of his inspection, would have a serious negative impact on the mental health and well-being of even an otherwise psychologically healthy person. Ex. 3, pg. 43. This conclusion should not be spoon-fed to the jury in the form of the testimony of an expert witness. Dr. Haney makes the general conclusion that the conditions would have an even more devastating impact on a person with pre-existing mental illness. Ex. 3, pg. 43. However, Dr. Haney does not form any opinions on Plaintiff's mental health, the conditions of Plaintiff's confinement in F-House, or whether Plaintiff, specifically, was adversely impacted. These are the fact-specific questions for the jury to determine. Even Dr. Haney acknowledges that "not literally every isolated prisoner will experience all or even necessarily most of the range of adverse reactions that restrictive housing imposes." Ex. 3, pg. 33. Without specific and detailed information about the Plaintiff, his medical health, and his experience in segregation, Plaintiff intends to use Dr. Haney's testimony to prejudice the jury into thinking that

Defendants were deliberately indifferent to Plaintiff by placing him in segregation because studies show that restrictive housing has a profoundly negative impact on individuals. This does not prove the actual impact restrictive housing had on the Plaintiff.

Again, Dr. Haney did not review Plaintiff's mental health records. Ex. 4, 24:14-22. He did not talk to Plaintiff about his experience as a part of his opinions. Ex. 3, pg. 10. Dr. Haney's report and testimony is based on general research conducted on the social issue of social isolation in the prison context and his own experience touring Stateville on dates that Plaintiff was not housed in segregation. See generally Ex. 3. Dr. Haney does not know what cell Plaintiff was housed in. Ex. 4, 26:5-8. Interestingly, Dr. Haney does not even know if Plaintiff was ever housed in F-House. Ex. 4, 55:15-17. Nor does Dr. Haney know how long Plaintiff was in solitary confinement. Ex. 4, 61:6-10.

Dr. Haney did not review any document that actually pertained to the Plaintiff. Ex. 4, 26:1-4. Dr. Haney can offer nothing more than speculation. Dr. Haney's testimony is that "to the extent to which [Plaintiff] was subjected to the conditions I've described here, he would have been vulnerable to the harms described also in my report." Ex. 4, 62:7-22. Dr. Haney cannot inform the jury what conditions Plaintiff was subjected to and cannot inform the jury if Plaintiff was in fact vulnerable to the harms posed by solitary confinement. Dr. Haney cannot opine whether Plaintiff was at heightened or intensified risk of harm by being in solitary confinement. The jury is capable of drawing any such conclusions on their own. This expert does not fulfil his role in aiding the juror understand anything pertaining to this case or the issues before the jurors.

**D. Neither Expert knows who the Defendants are, nor the allegations made against them.**

This is a Section 1983 action by an individual plaintiff against four individual defendants—not the State of Illinois as a whole or the IDOC. Both of Plaintiff's experts are entirely disconnected from the central factual issues in this case. They do not know who the Defendants are, what positions they held, or the specific conduct alleged against each. Without this knowledge, they cannot offer opinions on the core question in a deliberate indifference claim: whether each Defendant had subjective knowledge of a substantial risk to Plaintiff's health and consciously disregarded it, or how any Defendant's specific conduct affected him from a damages standpoint. However Plaintiff was actually affected by these Defendants, he will have to prove through his own testimony or other fact evidence—not through generalized opinions about segregation and mental health care that say nothing about what any Defendants knew or did here.

A deliberate indifference claim requires subjective knowledge of harm. To satisfy the subjective component, a prisoner must demonstrate that prison officials acted with a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The official must know of and disregard an excessive risk to inmate health; they must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and must also draw that inference. *Id.* at 837. Dr. Haney is a distinguished Professor of Psychology, who specialized in the academic area of "psychology and law." Ex. 3, pg. 1. He has published numerous scholarly articles on the topic of law and psychology, including the psychological effects of imprisonment and the nature and consequences of solitary confinement. Ex. 3, pg. 1-2. Dr. Haney has spent his career researching and understanding the psychological impact of restrictive housing on individuals. Because of his background and education, Dr. Haney has learned about the negative consequences

of restrictive housing on individuals. Dr. Rakofsky is a licensed psychologist. Dr. Rakofsky attended a two-year program to obtain a master's in clinical adult psychology. Ex. 2, 6:18-20. Dr. Rakofsky then attended a five-year program to obtain a doctorate in clinical psychology. Ex. 2, 8:3-5. In addition, Dr. Rakofsky practiced aspects of neuropsychology and trained under a neuropsychologist during his training in the master's and doctorate level. Ex. 2, 14:4-10.

These experts have formed their opinion and came to their conclusions utilizing their education, knowledge, and expertise in the area of psychology. Dr. Haney studies restrictive housing and the impact of social isolation on individuals in custody as a part of his life's work. Similarly, Dr. Rakofsky has a career in providing treatment therapy and in assessing, evaluating, and diagnosing people. These two experts have a different knowledge base than the named Defendants. Defendant Best was a Lieutenant, not a scholar in psychology. Defendant Hart was a licensed social worker, not a doctor. Defendant Williams was Warden, not an expert on mental health. Defendant Hunter was a correctional officer, again not an individual with the same level of knowledge as Plaintiff's experts. If allowed to testify, Plaintiff's experts are going to unfairly prejudice the jury by drawing conclusions informed by their education and careers. The question before the jury is whether the Defendants had subjective knowledge of harm. The experts will opine how segregation negatively impacts individuals in custody and how Mr. Haywood was provided insufficient care to his psychological sufferings and draw conclusions for the jury to make.

Importantly, neither expert have any opinions on the conduct or the allegations made against any of the Defendants. Dr. Rakofsky forms no opinion about the conduct of the Defendants, nor does he know who any of the Defendants are, and the allegations made against them. Ex. 2, 132:13-145:9. Dr. Rakofsky did not summarize any clinical encounters between any of the named

13

individual Defendants and the Plaintiff. Ex. 2, 145:14-18. Similarly, Dr. Haney does not know who Plaintiff's treating psychologists, psychiatrists, or any other mental health professionals are. Ex. 4, 24:23-25:2. Similarly, Dr. Haney does not know who any of the named Defendants are. Ex. 4, 28:5-24; 29:11-22. Neither expert can opine on the actions or the allegations made against the Defendants. Plaintiff's experts serve only to prejudice the jury and therefore must be barred from testifying.

## CONCLUSION

Here, Plaintiff's experts do nothing to help the jury understand any facts at issue nor aid the jury understand any of the evidence the Plaintiff intends on presenting. This is not the proper purpose of an expert. Dr. Rokofsky serves the purpose of narrating Plaintiff's life story and drawing conclusions that Plaintiff received below the standard of care treatment for his mental health issues after failing to consider the medical records and without digging into whether Plaintiff negatively impacted his own treatment. Dr. Haney serves the purpose of drawing the conclusion that segregation adversely impacted the Plaintiff after failing to consider Plaintiff's experience, treatment, and medical care. If anything, these experts serve the sole purpose of prejudicing the jury and therefore should be barred from testifying. The Defendants respectfully request that the Court grant their motion to bar expert testimony.

Date: August 15, 2025

KWAME RAOUL
Attorney General of Illinois

Respectfully Submitted,

s/*Kajal Patel*
Kajal Patel
ARDC #6346282
Assistant Attorney General
General Law Bureau
Prisoner Litigation Unit
115 S. LaSalle Street
Chicago, Illinois 60603
(773) 550-9687
Kajal.patel@ilag.gov